UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
GOOD LUCK PRODUCT CO., LTD.,

                    Plaintiff,

          -against-                          <u>MEMORANDUM & ORDER</u>
                                             14-CV-1727(JS)(SIL)
CRYSTAL COVE SEAFOOD CORP.,

                    Defendant.
-----------------------------------X
APPEARANCES
For Plaintiff:        Richard T. Cordano, Esq.
                      Russo, Karl, Widmaier and Cordano PLLC
                      400 Townline Road, Suite 170
                      Hauppauge, NY 11788

For Defendant:        Mark L. Cortegiano, Esq.
                      65-12 69th Place
                      Middle Village, NY 11379

SEYBERT, District Judge:

          Currently pending before the Court are: (1) defendant

Crystal Cove Seafood Corp.'s ("Defendant") motion to dismiss the

Complaint; and (2) plaintiff Good Luck Product Co. Ltd.'s

("Plaintiff") cross-motion to amend the Complaint.  For the

following reasons, both motions are GRANTED IN PART and DENIED

IN PART.

<u>BACKGROUND</u>[1]

          Plaintiff commenced this action on March 17, 2014

against Defendant in connection with seven shipments of shrimp

---

[1] The following facts are taken from the Complaint and presumed
to be true for purposes of Defendant's motion to dismiss
pursuant to Rule 12(b)(6).

it sent to Defendant from August 2008 through October 2008. Plaintiff packages, sells, and exports frozen shrimp from Thailand. (Compl. ¶ 6.) Defendant imports frozen seafood. (Compl. ¶ 7.)

Plaintiff and Defendant began doing business with one another in 2004. (Compl. ¶ 8.) For each relevant shipment, Defendant issued an irrevocable letter of credit to Plaintiff using either Bank Leumi USA ("Bank Leumi") or Brown Brothers Harriman & Co. ("Brown Brothers" and together with Bank Leumi, the "Banks") to issue the letters of credit. (Compl. ¶ 9.) Plaintiff and Defendant also entered into a written contract for each shipment in the form of a signed purchase order ("PO"), or a "Proforma Invoice." (Compl. ¶ 10.)

Pursuant to these arrangements, Plaintiff sent Defendant seven shipments between May 17, 2008 and August 21, 2008. (Compl. ¶ 11.) According to the Complaint, the commercial invoices for the fifth and sixth shipments deviated from the Proforma Invoices. (Compl. ¶¶ 18, 19.) However, as these deviations in quantity and amount were less than ten percent, the terms of the contracts were still met. (Compl. ¶¶ 18, 19.)

Plaintiff alleges that, although Defendant made seven partial payments from January 14, 2009 through September 22, 2009, the "payments did not match the invoice amounts" and

Defendant did not indicate the invoices to which the payments corresponded. (Compl. ¶ 21.) Plaintiff applied the payments to the oldest open invoice first. (Compl. ¶ 21.) Ultimately, Defendant paid $516,066.00, leaving a total balance of $220,864.00 (consisting of $109,264.00 on the sixth shipment and $111,600.00 on the seventh shipment).

According to Plaintiff, Defendant took "deliberate actions to defraud and take advantage" of Plaintiff, fraudulently representing to Plaintiff that the first three shipments would be paid such that Plaintiff would continue to send the next four shipments. (Compl. ¶ 22.) In addition, Plaintiff asserts that Defendant instructed its banks not to honor their letters of credit "on the false grounds that [Plaintiff] did not fulfill the orders and/or [Defendant] had rejected the shrimp." (Compl. ¶ 23.) Plaintiff alleges claims for breach of contract, violation of U.C.C. § 2-709, unjust enrichment, and fraud.

<u>DISCUSSION</u>

The Court will first address the applicable legal standards on a motion to dismiss and a motion to amend before turning to the merits of the parties' motions.

# I. Legal Standards

## A. Standard of Review under Rule 12(b)(6)

In deciding Rule 12(b)(6) motions to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); <u>accord</u> <u>Harris v. Mills</u>, 572 F.3d 66, 71-72 (2d Cir. 2009). <u>First</u>, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678; <u>accord</u> <u>Harris</u>, 572 F.3d at 72. <u>Second</u>, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. <u>Iqbal</u>, 556 U.S. at 679. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u>; <u>accord</u> <u>Harris</u>, 572 F.3d at 72.

Furthermore, in deciding a motion to dismiss, the Court is confined to "the allegations contained within the four corners of [the] complaint." <u>Pani v. Empire Blue Cross Blue Shield</u>, 152 F.3d 67, 71 (2d Cir. 1998). This has been interpreted broadly to include any document attached to the Complaint, any statements or documents incorporated in the Complaint by reference, any document on which the Complaint

heavily relies, and anything of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (citations omitted); Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991).

B.  Motion to Amend

Courts should grant leave to amend "when justice so requires." FED. R. CIV. P. 15(a)(2).  Leave to amend should be granted unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility.  See Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001).  To determine whether an amended claim is futile, courts analyze whether the proposed pleading would withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeal, 282 F.3d 83, 88 (2d Cir. 2002).

II. Timeliness

A. Plaintiff's Original Complaint

Defendant moves to dismiss Plaintiff's claim pursuant to the Uniform Commercial Code ("U.C.C.") and contingent claims on the grounds that they are barred by the four-year statute of limitations pursuant to U.C.C. § 2-725 and N.Y. C.P.L.R. § 213(2).  The Court agrees as to the U.C.C. claim.

"Section 2-275(1) of the UCC provides that an 'action for breach of any contract for sale must be commenced within

four years after the cause of action has accrued.'" <u>Old Country Toyota Corp. v. Toyota Motor Distribs., Inc.</u>, 966 F. Supp. 167, 170 (E.D.N.Y. 1997). Furthermore, "[a] cause of action accrues when the alleged breach occurs." <u>Id.</u> Here, there is no dispute that the contract or contracts at issue involve a transaction in goods and that the U.C.C. therefore applies. <u>See Architectronics, Inc. v. Control Sys., Inc.</u>, 935 F. Supp. 425, 431 (S.D.N.Y. 1996) ("[I]f the contract giving rise to the claim involves a 'transaction in goods,' the four-year limitations period of Article Two of the Uniform Commercial Code ('UCC') applies . . . ." (citing N.Y. U.C.C. Law § 2-725(1)). Accordingly, Plaintiff's claim pursuant to the U.C.C. is subject to the four-year statute of limitations.

The transactions at issue in this case occurred in 2008. The most recent delivery from Plaintiff to Defendant was November 16, 2008 and payment was due within ten days thereafter. (<u>See</u> Compl. ¶ 20 & Ex. G; Def.'s Br. to Dismiss, Docket Entry 4-2, at 3.) Thus, the latest breach occurred on November 26, 2008, when Defendant allegedly refused to provide payment. <u>See First Roumanian Am. Congregation v. GuideOne Mut. Ins. Co.</u>, 862 F. Supp. 2d 293, 306 (S.D.N.Y. 2012) ("Here that breach occurred on November 22, 2006 when, according to plaintiff, defendant failed to pay the actual cash value to which plaintiff was entitled."). Plaintiff did not commence

this action until March 17, 2014, however, well after four years past November 26, 2008. As Defendant further points out, the latest payment was September 22, 2009, still more than four years before commencement of the instant action. (Def.'s Br. to Dismiss at 3.) The statute of limitations, therefore, appears to bar Plaintiffs claim.

Plaintiff is correct that a statute of limitations is an affirmative defense and that a plaintiff need not necessarily plead against it. See St. John's Univ., N.Y. v. Bolton, 757 F. Supp. 2d 144, 156-57 (E.D.N.Y. 2010) ("Under New York law, the statute of limitations is an affirmative defense, and the defendant bears the burden of proving that the plaintiff's claim is untimely."). However, the original Complaint, as alleged, clearly presents a time-barred claim, without any indication otherwise. Id. at 157 ("For a defendant's statute of limitations arguments to succeed, the plaintiff must plead itself out of court." (internal quotation marks and citation omitted)). Although the Complaint discusses Defendant's alleged misrepresentations in the context of Plaintiff's fraud claim, those representations all occurred within the statutory time period and would not extend the statute of limitations for any reason. (See, e.g., Compl. ¶¶ 50-51 (discussing Defendant's alleged misrepresentations regarding the first three shipments);

Id. ¶ 53 (alleging that Defendant instructed the Banks not to honor the Letters of Credit).)

Accordingly, Defendant's motion to dismiss Plaintiff's original Complaint insofar as it alleges a time-barred claim under the U.C.C. is GRANTED.[2]

B. Amendment

Plaintiff's Proposed Amended Complaint ("PAC") asserts additional factual allegations that would potentially toll the statute of limitations period. (See PAC, Docket Entry 9.) Specifically, Plaintiff asserts that the additional allegations in the PAC would toll the statutory period due to Defendant's acknowledgement of the debt and because Defendant should be

---

[2] To the extent that Defendant argues that Plaintiff's fraud and unjust enrichment claims are duplicative, and therefore subject to the same four-year statute of limitations, these arguments will be addressed infra.

To the extent that Defendant has asserted that Plaintiff's breach of contract claim is also subject to the four-year statute of limitations because it is based upon the same set of facts as the U.C.C. claim, this argument is meritless. Courts have separately addressed the two claims under different sets of legal elements. See, e.g., Microban Prods. Co. v. API Indus., Inc., No. 14-CV-0041, 2014 WL 1856471 (S.D.N.Y. May 8, 2014) (separately addressing relevant claims under two different standards); Ortho Sleep Prods., LLC v. Dreamy Mattress Corp., No. 11-CV-6049, 2012 WL 6621288 (E.D.N.Y. Aug. 29, 2012) (same). The fact that the two claims are based upon the same set of facts does not mean that the two are subject to the same statute of limitations. Thus, Defendant's conclusory argument that the breach of contract claim should be dismissed as time-barred is DENIED as Defendant has not carried its burden on the motion. In any event, for the reasons stated infra, Plaintiff can amend as to timeliness, and therefore Plaintiff's motion to amend as to the breach of contract claim is GRANTED.

equitably estopped from arguing a statute of limitations defense. The Court will address each of these arguments in turn.

1. Acknowledgement

The PAC presents a new set of facts regarding an email chain in which Defendant allegedly acknowledged the debt. Plaintiff moves to amend the Complaint in this regard and asserts that Defendant's acknowledgment of the debt restarts the running of the clock for statute of limitations purposes. The Court finds that amendment is appropriate.

Plaintiff argues that "a relevant e-mail exchange from January through April of 2010 . . . shows that [Defendant], through its President Jim Salierno, reaffirmed the Debt it Owed to [Plaintiff] in a writing dated April 22, 2010, which started the four-year statute of limitations period running anew on that date." (Pl.'s Cross Br., Docket Entry 8-2, at 11.) The relevant email chain, which is attached to the PAC, starts with a communication on January 29, 2010 from Plaintiff's Managing Director, Siripaiboon Mathiprechakul ("Pichai") to Mr. Salierno. (PAC ¶ 52 & Ex. O.) In that communication, Pichai expresses his concern that Defendant has not paid balances due and still owes Plaintiff money. (PAC Ex. O.) Mr. Salierno responded on February 6, 2010 with the statement: "We owe you balances and will pay. Balance amounts are different based on product claims

etc.  Your comments are not accurate as you know.  Will wire funds next few days[.]"[3]  (PAC Ex. O.)  Thereafter, Pichai sent Mr. Salierno three additional emails, inquiring about the balance.  The last, on April 20, 2010 stated: "I have been waiting for so long time [sic].  Please try to keep your promise, thanks."  (PAC Ex. O.)  Mr. Salierno then responded: "Dear Pichai, Noted.  Regards, Jim."[4]  (PAC Ex. O.)  Plaintiff maintains that Mr. Salierno's latest communication constitutes an acknowledgment of the debt and that, therefore, Plaintiff's breach of contract claim is timely.

"For a writing to restart the limitations period for a debt, it must (1) 'recognize an existing debt' and (2) 'contain nothing inconsistent with an intention on the part of the debtor to pay it.'"  Clarex Ltd. v. Natixis Sec. Am. LLC, 988 F. Supp. 2d 381, 390 (S.D.N.Y. 2013) (quoting Knoll v. Datek Sec. Corp., 2 A.D.3d 594, 594, 769 N.Y.S.2d 581, 582 (2d Dep't 2003)).  "In determining the effectiveness of an acknowledgment, the critical determination is whether the acknowledgment imports an intention to pay."  Knoll, 2 A.D.3d at 594, 769 N.Y.S.2d at 582.

---

[3] This statement is still more than four years prior to commencement of the instant action.

[4] The date of this email is unclear.  Unlike the other emails in the exchange, the date on this latest email appears to be in a foreign language or font, and the attachment to the PAC contains a handwritten notation that the email was sent April 22, 2010.

Whether the writing at issue here constitutes an acknowledgment is unclear. Defendant correctly asserts that Mr. Salierno's statement is ambiguous. (Def.'s Reply Br., Docket Entry 11, at 8.) Nonetheless, one plausible reading of the email is that Mr. Salierno is acknowledging the debt. He certainly does not deny any debt, particularly given the context of the entire email chain, nor does he change or correct his earlier statement that Defendant indeed owes Plaintiff. See Cohan v. Movtady, 751 F. Supp. 2d 436, 441 n.5 (E.D.N.Y. 2010) ("Arguably, Defendant's October 17, 2003 email detailing the 'variouse [sic] loan amounts' satisfies N.Y. General Obligations Law § 17-101 because it recognizes the debt and is consistent with an intention to pay, thereby tolling the statute of limitations." (internal citation omitted)); Banco do Brasil S.A. v. State of Antigua & Barbuda, 268 A.D.2d 75, 77, 707 N.Y.S.2d 151, 152 (1st Dep't 2000) ("Even if this recital of a repayment obligation that is current and increasing with time is something less than a new promise to pay a past-due debt, it clearly conveys and is consistent with an intention to pay, which is all that need be shown in order to satisfy section 17-101." (citations omitted)). Moreover, the single word "Noted" does not contain conditions to payment or express anything inconsistent with an intention to pay. Ultimately, whether the email imports an intention to pay is a fact-specific inquiry

that the Court cannot decide at this stage of the litigation. Clarex Ltd., 988 F. Supp. 2d at 390 ("[W]hether an acknowledgment is sufficient to restart the running of a period of limitations depends on the circumstances of the individual case." (internal quotation marks and citation omitted.")). Indeed, courts often await additional discovery and, at times, a trial, to flesh out the defendant's intent and determine whether an acknowledgment should restart the statute of limitations. See id. at 392-93 (denying summary judgment because issues of fact remained as to whether there was an acknowledgment); Cognetta v. Valencia Developers, Inc., 8 A.D.3d 318, 320, 778 N.Y.S.2d 80, 82 (2d Dep't 2004) ("At this juncture, it cannot be determined whether the entries in the tax returns and financial statements of Associates describing the loan constituted an acknowledgment of the debt sufficient to revive or toll the statute of limitations, or evince an intent on the part of Associates to pay it." (citation omitted)); Knoll, 2 A.D.3d at 594, 769 N.Y.S.2d at 582 ("A trial is required to ascertain the defendants' intent in listing a balance on the commission analysis statements and whether the commission analysis documents constitute written acknowledgments of a debt sufficient to take the action outside the statute of limitations." (citation omitted)). Defendant's own case law supports this proposition. See F&K Supply v. Willowbrook Dev.

12

<u>Co.</u>, 304 A.D.2d 918, 759 N.Y.S.2d 194 (3d Dep't 2003) (conducting a trial before determining that the evidence did not support a finding of acknowledgment).

Accordingly, Plaintiff's motion to amend in this regard is GRANTED.

### 2. Equitable Estoppel

Plaintiff further seeks to amend the Complaint to add a "cause of action" alleging that Defendant should be estopped from asserting a statute of limitations argument. The Court finds that Plaintiff has set forth sufficient allegations to allow amendment.

"The doctrine of equitable estoppel applies where it would be unjust to allow a defendant to assert a statute of limitations defense. . . . [Such as] where a plaintiff is induced by fraud, misrepresentations or deception to refrain from filing a timely action." <u>Twersky v. Yeshiva Univ.</u>, 993 F. Supp. 2d 429, 442 (S.D.N.Y. 2014) (internal quotation marks and citations omitted). "To invoke equitable estoppel, a plaintiff must show that: (1) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on that misrepresentation to his detriment." <u>Tardd v. Brookhaven Nat'l Lab.</u>, 407 F. Supp. 2d 404, 416 (E.D.N.Y. 2006) (internal quotation marks and citation omitted). "Typically,

the doctrine is invoked in cases in which [a defendant] has made misrepresentations concerning the statute of limitations or lulled the plaintiff into believing that it was not necessary for him to commence litigation." Id. (internal quotation marks and citation omitted).

Here, the PAC details a series of communications and meetings between Plaintiff and Defendant, including representations that Mr. Salierno made to "Jeffrey Sedacca, who was trying to assist [Plaintiff] in collecting the money from [Defendant]." (PAC ¶ 145.) For example, in August 2009, Mr. Salierno allegedly told Pichai that he would pay the balances, minus certain "count and weight" charges and any offset from purported "anti-dumping" fees that the United States Commerce Department had levied or would levy against Defendant. (PAC ¶¶ 150-53.) Mr. Salierno indicated that the amount of the offset was "tied up in litigation" and that if they won, Defendant would remit payment. (PAC ¶ 154.)

Similar communications continued between April 2010 and May 2012, during which time Mr. Salierno told Pichai that Defendant would pay the balances and that the offset was still unresolved in litigation. (PAC ¶¶ 161-62.) During an in-person meeting in May 2012, Mr. Salierno again told Pichai that the balances would be paid. (PAC ¶ 171.) In addition, in telephone conversations between 2009 and 2013, Mr. Salierno told Mr.

Sedacca--Pichai's "trusted friend"--that the balances would be paid and that it was just a matter of time. (PAC ¶¶ 165-170.)

Plaintiff then began communications through counsel, and Defendant responded via counsel in July, August, and September 2013 that "it intended to pay the balances without an action being filed." (PAC ¶ 184.) Finally, "[o]n December 20, 2013, in a telephone conversation between Jim Salierno and Jeffrey Sedacca, Mr. Salierno told Mr. Sedacca, that he would pay Pichai $100,000. Mr. Salierno told Mr. Sedacca that this is the most he will ever pay towards the Balances." (PAC ¶ 186.)

These allegations identify specific false representations or concealments and, at least arguably, indicate Defendant's intent to lull Plaintiff into believing that suit was not necessary. Although there is nothing to indicate whether Mr. Salierno's statements that funds were "tied up in litigation" or regarding the anti-dumping fees were false, Plaintiff's allegations suggest that the promises to pay were empty. In fact, Defendant does not directly oppose these amendments, and has neither confirmed nor denied Plaintiff's assertions.

In addition, Plaintiff's PAC specifically references various purported settlement discussions. Sheer settlement negotiations, however, are insufficient to invoke equitable estoppel. Toto Inc. v. Sony Music Entm't, No. 12-CV-1434, 2012

WL 6136365, at *12 (S.D.N.Y. Dec. 11, 2012) ("Without more, Toto's allegation that Sony engaged in settlement discussions that were ultimately unsuccessful is not, as a matter of law, sufficient to establish an equitable estoppel defense."); Pfohl Bros. Landfill Site Steering Comm. v. Allied Waste Sys., Inc., 255 F. Supp. 2d 134, 171 (W.D.N.Y. 2003) ("The mere fact that settlement negotiations have been ongoing between the parties is not sufficient to justify an estoppel." (internal quotation marks and citation omitted)). Nonetheless, Plaintiff alleges a series of communications over the course of years that theoretically supports the proposition that Defendant strung Plaintiff along with promises to pay. See Bild v. Konig, No. 09-CV-5576, 2011 WL 666259, at *5 (E.D.N.Y. Feb. 14, 2011) ("While settlement negotiations alone will not suffice to invoke the doctrine, a defendant may be estopped from asserting the defense of the Statute of Limitations when it has by its conduct induced a party to postpone bringing suit on a known cause of action." (internal quotation marks and citations omitted)). Ultimately, whether Plaintiff's allegations are sufficient in this regard cannot be decided at this stage. See Tardd v. Brookhaven Nat'l Lab., 407 F. Supp. 2d 404, 417 (E.D.N.Y. 2006) ("Whether or not this defense should be available to Tardd in this case cannot be determined without a more fully developed record."); George Tsunis Real Estate, Inc. v. Benedict, 36

Misc.3d 1209(A), *4, 954 N.Y.S.2d 759 (N.Y. Sup. Ct. 2012) (finding that there were issues of fact regarding the application of equitable estoppel).

Moreover, the purported amendments to the Complaint also plausibly set forth that Plaintiff did not know the true facts and reasonably relied upon Defendant's representations. Twersky, 993 F. Supp. 2d at 442-43 ("In order to invoke equitable estoppel, a plaintiff must also demonstrate reasonable reliance on the defendant's misrepresentations, and due diligence in bringing a claim when the conduct relied upon as the basis for equitable estoppel ceases to be operational." (citations omitted)). "[A] plaintiff must act diligently by suing within a reasonable time after the facts giving rise to the estoppel have ceased to be operational." Dep't of Econ. Dev. v. Arthur Anderson & Co. (U.S.A.), 924 F. Supp. 449, 481 (S.D.N.Y. 1996) (internal quotation marks and citation omitted). Plaintiff maintains that the deception ceased to be operational in December 2013, when Mr. Salierno finally made clear that he would not pay any more than $100,000. (Pl.'s Cross Br. at 24.) Plaintiff then commenced suit on March 14, 2014. Thus, Plaintiff has at least alleged that it acted within a reasonable amount of time. See Weizmann Inst. of Sci. v. Neschis, 229 F. Supp. 2d 234, 252 (S.D.N.Y. 2002) (holding that it was not possible to determine whether the plaintiff acted diligently on

a minimal record); Dep't of Econ. Dev., 924 F. Supp. at 481 (holding that reasonable jurors could conclude that a fourteen-month delay in bringing suit demonstrated the requisite diligence for equitable estoppel purposes).

Accordingly, Plaintiff's motion to amend the Complaint to include allegations regarding equitable estoppel is GRANTED.

II. Plaintiff's Unjust Enrichment and Fraud Claims

Defendant additionally asserts that Plaintiff's unjust enrichment and fraud claims are duplicative of its claims under the U.C.C. The Court will begin with Plaintiff's unjust enrichment claim.

A. Unjust Enrichment

Defendant argues that Plaintiff's unjust enrichment claim is barred by the existence of a valid and enforceable contract. (Def.'s Br. to Dismiss at 4.) The Court agrees.

"Unjust enrichment is a quasi contract claim, and the existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." Feigen v. Advance Capital Mgmt. Corp., 150 A.D.2d 281, 283, 541 N.Y.S.2d 797, 799 (1st Dep't 1989) (internal quotation marks and citation omitted). Moreover, New York law is well settled that "a nonsignatory to a contract cannot be held liable where there is an express contract governing the same subject

matter." Seneca Pipe & Paving Co. v. S. Seneca Cent. Sch.
Dist., 63 A.D.3d 1556, 1557, 880 N.Y.S.2d 807, 808 (4th Dep't
2009) (internal quotation marks omitted) (quoting Feigen, 150
A.D.2d at 283, 541 N.Y.S.2d at 799).

Here, there is no dispute that valid and enforceable
contracts governed. This is not a case in which Plaintiff
pleads alternative relief, but rather an instance in which the
unjust enrichment claim is directly duplicative of the breach of
contract claim. Accordingly, Defendant's motion to dismiss the
unjust enrichment claim is GRANTED and Plaintiff's motion to
amend insofar as the PAC alleges unjust enrichment is DENIED.
The unjust enrichment claim is therefore DISMISSED WITH
PREJUDICE.

B. Fraud

Defendant further argues that Plaintiff's fraud claim
must be dismissed as duplicative. The Court partially agrees.

In order to properly state a claim for fraud, as
independent from a claim for breach of contract, a plaintiff
must either: "(i) demonstrate a legal duty separate from the
duty to perform under the contract; or (ii) demonstrate a
fraudulent misrepresentation collateral or extraneous to the
contract; or (iii) seek special damages that are caused by the
misrepresentation and unrecoverable as contract damages."
Bridgestone/Firestone v. Recovery Credit Servs., Inc., 98 F.3d

13, 20 (2d Cir. 1996) (internal citations omitted).  Here,
Plaintiff argues that it can demonstrate a legal duty separate
from the duty to perform under the contract and that it can
demonstrate a fraudulent misrepresentation collateral or
extraneous to the contract.

Specifically, Plaintiff's arguments focus on
Defendant's alleged misrepresentations to the Banks.  For
example, Plaintiff asserts that Defendant's misrepresentations
to the Banks regarding the Letters of Credit are collateral and
extraneous to the POs and Plaintiff's breach of contract claim.
(Pl.'s Cross Br. at 6.)  Plaintiff further argues that the
Letters of Credit created a separate legal duty insofar as
Defendant and the Banks are concerned.  (Pl.'s Cross Br. at 7-
9.)  Notably, though, these arguments only address part of
Plaintiff's fraud claim.

### 1. Plaintiff's Fraud Claim Based Upon Misrepresentations to Plaintiff

The Complaint apparently addresses several theories of
fraud.  One theory is that Defendant made fraudulent
misrepresentations to the Banks.  But another theory is that
Defendant fraudulently induced Plaintiff to continue shipping
goods.  (See, e.g., Compl. ¶ 50.)  Insofar as this second theory
is concerned, Plaintiff fails to identify a separate legal duty
or a misrepresentation collateral or extraneous to the contract.

Rather, the basis of Plaintiff's claim in this regard is that Defendant misrepresented that it would pay the first three POs (or the first three contracts) in order to induce Plaintiff to continue its contractual relationship. This is a classic example of a duplicative claim. Therefore, Defendant's motion to dismiss the Complaint to the extent that it alleges a duplicative fraud claim is GRANTED to the extent that Plaintiff alleges fraud on the grounds specified.

2. <u>Plaintiff's Fraud Claim Based Upon Misrepresentations to the Banks--Collateral or Extraneous</u>

Insofar as Plaintiff alleges fraud based upon Defendant's alleged misrepresentations to the Banks, however, this presents a more complex inquiry. Plaintiff initially argues that Defendant misrepresented to the Banks that Plaintiff "did not fulfill the orders and/or [that Defendant] had rejected the shrimp." (Compl. ¶ 53.) These misrepresentations, according to Plaintiff, are collateral or extraneous to the contract or contracts at issue. Defendant counters that Plaintiff's fraud claim "is defective because it is based upon misrepresentation[s] to and reliance by a third party." (Def.'s Reply Br. at 4.)

Defendant's point, while well taken, is not wholly accurate. A misrepresentation to a third party can form the basis of a fraud claim. <u>See</u> <u>Prestige Builder & Mgmt. LLC v.</u>

Safeco Ins. Co. of Am., 896 F. Supp. 2d 198, 203 (E.D.N.Y. 2012)

("While the plaintiff alleging fraud must normally show that it

reasonably relied upon a misrepresentation made by the defendant

to its detriment, the doctrine of third-party reliance permits

the plaintiff to show that a third-party relied upon a

misrepresentation by the defendant, which resulted in injury to

the plaintiff."); see also Chevron Corp. v. Donziger, No. 11-CV-

0691, 2013 WL 98013, at *3 (S.D.N.Y. Jan. 7, 2013) (holding that

New York recognizes fraud claims based upon third party

reliance). For example, the District Court for the Southern

District has explained:

> Several cases have held that a claim for
> fraud cannot lie where the misrepresentation
> is made to and relied upon by a third party,
> rather than the plaintiff. On the other
> hand, courts have accepted that even where
> misrepresentations are made to a third
> party, a plaintiff may state a claim for
> fraud so long as it relied on those
> misrepresentations.

Hyosung Am., Inc. v. Sumagh Textile Co., Ltd., 25 F. Supp. 2d

376, 383 (S.D.N.Y. 1998) (citations omitted). The Court went on

to note that "New York courts have [also] recently held that a

plaintiff may state a claim for fraud where a defendant's

misrepresentation caused a third party to extinguish its

financial obligation to the plaintiff." Id. (citations

omitted).

Here, Plaintiff has sufficiently alleged that Defendant's misrepresentations to the Banks caused the Banks to extinguish their financial obligations to Plaintiff. The very crux of Plaintiff's claim is that Defendant misrepresented certain facts to the Banks, which caused the Banks to decline honoring the Letters of Credit in Plaintiff's favor. (See, e.g., Compl. ¶ 57.) Accordingly, the Bank's reliance on Defendant's alleged misrepresentations does not preclude Plaintiff's fraud claim. See My First Shades v. Baby Blanket Suncare, 914 F. Supp. 2d 339, 352-53 (E.D.N.Y. 2012) (denying motion to dismiss fraud claim where third-party consumer relied upon the defendant's misstatements, causing harm to the plaintiff).

Moreover, neither party fully addresses whether the misrepresentations at issue here were collateral or extraneous. Nonetheless, Plaintiff has plausibly asserted a potential claim. Collateral typically pertains to present fact as opposed to future intentions. See IKB Int'l S.A. v. Bank of Am., No. 12-CV-4036, 2014 WL 1377801, at *14 (S.D.N.Y. Mar. 31, 2014) ("To constitute a fraudulent misrepresentation collateral or extraneous to the contract, the statement must be a misrepresentation regarding present facts, as opposed to one reflecting an intent to perform in the future . . . ." (internal quotation marks and citation omitted)); Ho Myung Moolsan Co.,

Ltd. v. Manitou Mineral Water, Inc., 665 F. Supp. 2d 239, 254 (S.D.N.Y. 2009) ("A representation is collateral to a contract when it pertains to present facts and not promissory statement[s] of what will be done in the future." (internal quotation marks and citation omitted) (alteration in original)); Miramax Film Corp. v. Abraham, No. 01-CV-5202, 2003 WL 22832384, at *12 (S.D.N.Y. Nov. 25, 2003) ("A misrepresentation of present fact, which is collateral or extraneous to the terms of the parties' original agreement . . . can be the basis for a fraudulent inducement claim."). Here, the misrepresentations pertained to present fact, indicating that they were indeed collateral. In addition, while the representations pertain to the contracts at issue, they are not representations regarding Defendant's intention to perform under them. See Miramax Film Corp., 2003 WL 22832384, at *12 ("The misrepresentations concerning Allied's offer are of interest to plaintiff solely because it relates to defendants' performance under the Koyla Agreement. Therefore, these alleged misrepresentations are not collateral to terms of the parties' contract.").

3. Plaintiff's Fraud Claim Based Upon Misrepresentations to the Banks—Separate Legal Duty

Plaintiff also asserts that Defendant's alleged misrepresentations to the Banks present a separate legal duty. The Court agrees.

"Letters of credit involve three separate, but related relationships: (1) the underlying sales contract between a buyer . . . and seller . . .; (2) the agreement between the issuing bank . . . and the applicant . . .; and (3) the letter of credit itself, which is the Bank's promise to pay the seller-beneficiary . . . upon compliance with the terms and conditions specified in the letter of credit." Hyosung Am., Inc., 25 F. Supp. 2d at 382 (citations omitted). Defendant correctly notes that much of the case law appears to address a scenario in which the seller committed fraud against the issuing bank. (Def.'s Br. to Dismiss at 5.)

However, the case law also makes clear that each of the three relationships creates separate legal duties. See Hyosung Am., Inc., 25 F. Supp. 2d at 382 (the plaintiff's claim based on the seller's fraud to the issuing bank concerned a transaction "separate and distinct" from the contract between the buyer and the seller); 3Com Corp. v. Banco de Brasil, S.A., 2 F. Supp. 2d 452, 456 (S.D.N.Y. 1998) ("The law is clear that each of the three relationships constitutes a separate and independent contract."); Cont'l Grain Co. v. Meridien Int'l Bank, Ltd., 894 F. Supp. 654, 657-58 (S.D.N.Y. 1995) ("[A] complete separation exists between the underlying commercial transaction and the letter of credit issued to finance that

transaction: a separation regarded as essential to a letter of credit's commercial utility.").

Defendant's relationship with the Banks, therefore, plausibly presents a separate legal duty from its obligations to perform under the contract.

### 4. Motion to Amend the Fraud Claim

Although Plaintiff has theoretically presented a valid fraud claim and Defendant's motion is accordingly DENIED to the extent specified <u>supra</u>, this does not end the Court's inquiry.

The PAC adds some allegations regarding fraud. Plaintiff's allegations regarding alleged misrepresentations from Defendant to Plaintiff, though, are primarily the same as alleged in the original Complaint. The PAC's additional factual allegations do not rectify the deficiencies in this regard. Defendant's misrepresentations to Plaintiff remain duplicative of the breach of contract claim and, therefore, Plaintiff's motion to amend in this regard is DENIED.

Plaintiff's allegations of fraud based upon misrepresentations to the Banks, while not duplicative for the reasons specified above[5], present another challenge. Neither the original Complaint, nor the PAC, alleges fraud with

---

[5] In holding that the fraud claim is theoretically independent of any breach of contract or U.C.C. claim, it necessarily follows that Plaintiff's fraud claim is not subject to the four-year statute of limitations applicable to U.C.C. claims.

particularity. Federal Rule of Civil Procedure 9(b) requires that a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). To comply with the particularity requirement, "[p]laintiff must: (1) specify the alleged fraudulent statements; (2) identify the speaker; (3) state where, when and to whom the statements were made; and (4) explain why the statements were fraudulent." Waldman v. New Chapter, Inc., 714 F. Supp. 2d 398, 402 (E.D.N.Y. 2010).

The PAC expands upon the ways in which Defendant's allegedly committed fraud, for example:

> by (a) providing false information to Bank Leumi and Brown Brothers that CRYSTAL COVE had rejected the shrimp; (b) refusing to accept discrepancies in the documents at the Bank's request when these discrepancies were minor and were routinely accepted in past dealings between the parties, and CRYSTAL COVE advised GOOD LUCK that the discrepancies would in fact be waived; (c) refusing to accept discrepancies in the documents despite the fact that Mr. Salierno expressly told GOOD LUCK to resubmit the paperwork to the Banks when CRYSTAL COVE was trying to convince GOOD LUCK to ship more shrimp; (d) refusing to provide GOOD LUCK, or the Banks, with warehouse receipts and other documents that were in CRYSTAL COVE's exclusive possession when CRYSTAL COVE knew that GOOD LUCK needed to submit these warehouse receipts and documents to the Banks for the release of payment; (e) refusing to extend Letters of Credit as promised; and (f) insisting that ownership of the shrimp be in CRYSTAL COVE's name as a condition for putting in place a Letter of

Credit that CRYSTAL COVE never intended on honoring.

(PAC ¶ 131.)  However, the PAC does not identify the exact statements or explain when they were made.  See DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc., 770 F. Supp. 2d 497, 526 (E.D.N.Y. 2011) ("[P]laintiffs' vague allegation that the alleged misstatements were made 'repeatedly' over the course of ten years is not sufficient under Rule 9(b) to state a claim for mail fraud."); Alnwick v. European Micro Holdings, Inc., 281 F. Supp. 2d 629, 640 (E.D.N.Y. 2003) ("[V]ague window of time is insufficient to satisfy the pleading standards of Rule 9(b)."). Moreover, although some statements are attributed to Mr. Salierno, others are attributed to Defendant more generally.

Accordingly, the Court finds that amendment to add the fraud claim would be futile, as Plaintiff's allegations do not satisfy the heightened pleading standard of Rule 9(b).  If appropriate, Plaintiff may move, once again, to amend the Complaint and plead a potential fraud claim with particularity.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART.  It is GRANTED as to Plaintiff's U.C.C. claim, Plaintiff's unjust enrichment claim (which is DISMISSED WITH PREJUDICE), and Plaintiff's fraud claim founded on misrepresentations to Plaintiff (which is also

DISMISSED WITH PREJUDICE). Defendant's motion to dismiss is otherwise DENIED. Plaintiff's motion to amend is also GRANTED IN PART and DENIED IN PART. It is GRANTED insofar as Plaintiff amends its U.C.C., breach of contract, and equitable estoppel claims.[6] It is DENIED as to Plaintiff's fraud claim, and Plaintiff may again move to amend the Complaint to the extent consistent with this Memorandum and Order if it can appropriately plead fraud.

The Clerk of the Court is directed to docket the PAC, (Docket Entry 9) as the Amended Complaint, which will be the operative Complaint consistent with this Court's rulings.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:      November __17__, 2014
            Central Islip, NY

---

[6] Contrary to Defendant's assertion, amendment would not be prejudicial nor extend the statute of limitations because the claims would relate back to the date of the original Complaint. See FED. R. CIV. P. 15(c)(1).